IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DAWN M. BYRD
     Plaintiff,

v.                     Case No.  3:12cv158/MCR/CJK

MICHAEL J. ASTRUE,
Commissioner of Social Security,
     Defendant.

---

## REPORT AND RECOMMENDATION

     This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b), and NORTHERN DISTRICT OF FLORIDA LOCAL RULES 72.1(A), 72.2(D), and 72.3, relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. §§ 401-1400v. The case is now before the court pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying claimant's application for Supplemental Security Income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, *et. seq*.

     Upon review of the record before this court, I conclude that the findings of fact and determinations of the Commissioner are not supported by substantial evidence. The decision of the Commissioner, therefore, should be vacated, and the matter remanded for further proceedings.

PROCEDURAL HISTORY[1]

Plaintiff (Dawn M. Byrd, who will be referred to by name, as plaintiff, or as claimant) filed her application for Supplemental Security Income on December 10, 2007. Upon denial, plaintiff requested a hearing before the ALJ. The ALJ found that plaintiff was not disabled, and request for review has been denied by the Appeals Council. Thus, the ALJ's decision stands as the final decision of the Commissioner. Plaintiff now seeks judicial review.

FINDINGS OF THE ALJ

In the written decision the ALJ made a number of findings relative to the issues raised in this appeal:

1. Claimant has not engaged in substantial gainful activity since December 10, 2007, the application date.

2. Claimant has the following severe impairments: history of asthma, post lumbar laminectomy syndrome, lumbar radiculopathy, lumbar spondylolisthisis, lumbar herniated nucleus pulposus, lumbar spinal stenosis, and chronic pain.

3. Claimant does not have a "listed impairment." *See* 20 C.F.R Part 404, Subpart P, Appendix 1.

4. Claimant has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 416.967(b).

5. Claimant can perform here past relevant work as a fast food worker, parts clerk, waitress, and cashier.

---

[1] The administrative record, as filed by the Commissioner, consists of fifteen volumes (doc. 9-2 through 9-16 ), and has 791 consecutively numbered pages. References to the record will be by "T." for transcript, followed by the page number.

6.   Claimant has not been under a disability, as defined by the Act, since the date
     of her application.

T.  12-17.

<u>STANDARD OF REVIEW</u>

A federal court reviews a Social Security disability case to determine whether
the Commissioner's decision is supported by substantial evidence and whether the
correct legal standards were applied by the ALJ.  *See Lewis v. Callahan*, 125 F.3d
1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th
Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when
convinced that it is not supported by substantial evidence or that proper legal
standards were not applied.").  Substantial evidence is "'such relevant evidence as a
reasonable person would accept as adequate to support a conclusion.'"  *Richardson
v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305
U.S. 197 (1938)).  With reference to other standards of review, the Eleventh Circuit
has said, "'Substantial evidence is more than a scintilla . . . .'"  *Somogy v. Comm'r of
Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at1439).
Although the ALJ's decision need not be supported by a preponderance of the
evidence, "it cannot stand with a 'mere scintilla' of support." *Hillsman v. Bowen*, 804
F.2d 1179, 1181 (11th Cir. 1986).  The reviewing court "'may not decide the facts
anew, reweigh the evidence, or substitute [its] judgment for that of the Secretary[.]'"
*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v.
Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Nevertheless, a reviewing court may
not look "only to those parts of the record which support the ALJ[,]" but instead
"must view the entire record and take account of evidence in the record which

detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). In sum, review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d. 1273, 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[2] The recitation of medical and historical facts of this case, as set out below, is based upon my independent review.

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

---

[2] The Eleventh Circuit speaks not only of independent review of the administrative record, but reminds us it conducts *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

2.      If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. *See* 20 C.F.R. § 404.1512. The ALJ resolved the present case at step four. Because the undersigned finds that this conclusion is not supported by substantial evidence, comment on the operation of step five is warranted. The Eleventh Circuit has explained the operation of step five. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001) ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was

initiated by the courts, and is not specifically provided for in the statutes or regulations. *See Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) ('The shifting of the burden of proof is not statutory, but is a long-standing judicial gloss on the Social Security Act')).").

Step five (or step four in cases such as the present one where the ALJ has decided claimant can perform her past work) is where the rubber meets the road. At that point, the ALJ formulates the all-important residual functional capacity. Even where one or more severe impairments are established, the claimant must show that she cannot perform work within that residual functional capacity. The ALJ establishes residual functional capacity, utilizing the impairments identified at step two, by interpretation of (1) the medical evidence, and (2) the claimant's subjective complaints (generally complaints of pain). Residual functional capacity is then used by the ALJ to make the ultimate vocational determination required by step five.[3] "[R]esidual functional capacity is the most [claimant] can still do despite [claimant's] limitations."[4] 20 CFR § 404.1545(1). Often both the medical evidence and the

---

[3] "Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps." 20 C.F.R. § 404.1520(a)(4).

[4] In addition to this rather terse definition of residual functional capacity, the Regulations describe how the Commissioner makes the assessment:

(3) Evidence we use to assess your residual functional capacity. We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity. (See § 404.1512(c).) However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources. (See §§ 404.1512(d) through (f).)

accuracy of a claimant's subjective complaints are subject to a degree of conflict, and that conflict leads, as in this case, to the points raised on judicial review by many disappointed claimants.

FACT BACKGROUND AND MEDICAL HISTORY[5]

Claimant's history of serious back problems is without real dispute. She had an automobile accident as a teenager, causing injury to the low back. T. 196. By age twenty, she had been diagnosed with ruptured disc at L4-5, causing radiculitis, and also with spondylolisthisis. T. 196. After conservative treatment failed, T. 200, claimant had surgery in November of 1988. The procedure involved wide lateral mass fusion, L-4 to sacrum, bilateral. T. 199. The surgery removed half of the L-4 lamina, and complete laminectomy at L-5. The surgeon also excised the disc at L4-5 and L-5/S-1. T. 199. The fusion portion of the procedure is also known as a bone graft. T. 199.

Shortly after the November surgery, Ms. Byrd was diagnosed with acute and chronic inflammation, secondary to an infection at the wound site. T. 201. For this, she underwent additional procedures, described as debridement and irrigation of the lumbar wound, removal of the bone graft, multiple cultures of the wound, and open

---

We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. (See § 404.1513.) We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons. (See paragraph (e) of this section and § 404.1529.)[.]

20 C.F.R. § 404.1545(a)(3).

[5] Although intended to be thorough, and to provide an overview of claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as called for in the Analysis section.

packing of the wound.  T. 202.  She then had another procedure and closure of the infected area several days later.  T. 204.

In March, 1989, claimant had another spinal fusion, again L-4 to sacrum.  T. 206.  She had a discharge diagnosis of radiculitis, S-1 nerve root bilaterally, spondylolisthisis L-5 on S-1, and scarring of the nerve root and dural sac, secondary to wound infection and postoperative surgical changes.  T. 210.

Continuing to experience low back and bilateral leg pain, plaintiff had an MRI in June of 2002.  This study revealed the previous spinal fusion as well as mild anterolisthesis at L5 in relation to S1.  The radiologist found it difficult to assess the degree of impingement of the exiting nerve root.  T. 214-215.  In September of 2002, plaintiff saw Dr. Peter Szymoniak, who evaluated her for chronic back pain.  The doctor believed all the pain was from the L5-S1 level.  T. 233-234.  He described Ms. Byrd as "very excited to pursue any possible avenue of . . . pain relief."  T. 234.

Also, in June, 2002, Ms. Byrd had an involuntary admission to the Lakeview Crisis Stabilization Unit.  She had taken an overdose of lithium "because of her chronic pain of her back and she could not deal with her life due to her chronic pain. She wanted to have all the pain go away and be fixed."  T. 218.  Lakeview records reflect that claimant's pain management, including pain medications, were not effectively treating the chronic pain, leading to difficulty "dealing with her life."  T. 218.

In May of 2003, Dr. Robert Sackheim diagnosed failed back syndrome.  Dr. Sackheim performed lumbar discography at L3-4, L4-5, and L5-S1 under the fluoroscope.  T. 221.  Findings of this procedure included abnormal and irregular appearance at L5-S1, and severe disc space narrowing at L4-5.  T. 222.

In June 2003, Dr. Szymoniak assessed pseudoarthrosis at L5-S1. T. 231. Dr. Szymoniak proposed a one level spinal fusion from L5 to the sacrum, using screws and autogenous bone graft. In August, claimant continued to have back pain. Dr. Szymoniak prescribed Methadone, four times a day, for pain. T. 229. In November, 2003, Dr. Szymoniak assessed chronic back pain without neurological deficit. Also, the doctor did not "feel there was a solid fusion." T. 224. Dr. Szymoniak believed that the pain continued to warrant a prescription for Methadone, 10mg, four times a day. Claimant continued to experience back pain, with pain radiating down both legs. T. 225.

More recently, plaintiff has been treated for pain at the Escambia Community Clinic. T. 608-626; 628-634. She described her back pain as having "been occurring for years." T. 614. The pain was moderate, with exacerbation at times. She had consistent complaints of pain over many visits to the clinic from 2008 through January 2011. T. 617-636; 762-776. In 2010, the clinic doctors referred claimant to Pain Consultants of West Florida. T. 636.

Claimant presented to Pain Consultants in February 2010 for evaluation of low back and leg pain. T. 636. She described her pain as starting in the middle of the back and extending into the right leg to the foot. The pain was constant in nature, sharp to aching, and shooting in quality. T. 636. Pain became worse with change in weather, coughing, sneezing, bending, walking and sitting. She has some relief with laying down. T. 636. Claimant rated her pain as 8/10 at best and 10/10 at her worst. She was taking Tramadol, an opiod pain medication, and Mobic, a nonsteroidal anti-inflammatory daily for the pain, as prescribed by the clinic doctor. T. 636.

Dr. Garrett at Pain Consultants noted difficulty in transition, and antalgic gait, bilaterally. T. 638. Claimant had tenderness to palpation over the lower lumbar sacral junction, bilaterally, and over the sciatic notch. She could go up on her heels and toes, but with difficulty. T. 638. Dr. Garrett felt lumbar epidural blocks should be considered, but Ms. Byrd elected to wait based on financial limitations. T. 638. She has scheduled an epidural with Dr. Kruger at Pain Consultants, if she has the money to do it. T. 39

## EVIDENCE DEVELOPED AT ADMINISTRATIVE HEARING

Ms. Byrd, represented by Mr. Nick Ortiz, attended an administrative hearing before ALJ Ben Shelly on March 19, 2010. Vocational expert Jody Skinner also appeared and testified. She was then forty-one years old, with a twelfth grade education. T. 40. She lives with her boyfriend, a laborer, who provides support. T. 42. Ms. Byrd related her past drug and alcohol problems, including nasal cocaine use. T. 45. She has not used cocaine since 2003. T. 46.

On a normal day, plaintiff's boyfriend helps her out of bed. She uses a shower chair. She then rests in bed. Afterwards, she may do dishes until she starts hurting. She will then sit, and get up and finish her chores. Sometimes she can prepare dinner. T. 46. She cries a lot during the day, but gets her housework done. T. 47. The boyfriend has done the shopping for a long time, and sometimes her daughter helps around the trailer. T. 47.

Claimant has been in jail. She was found with unprescribed Methadone. T. 48. Claimant admits she had the drug, and claims her prescription had run out. T. 48. She also violated her probation, and was released from county jail in April 2007. T. 47-48.

Claimant needs to rest about five times a day for approximately thirty minutes each time. T. 49-50. She limits her household chores to dishes and cooking. T. 51. She requires help with personal grooming, such as bathing and needs to have her boyfriend shave her legs, because she can't do that. T. 53. Explaining why she cannot shave herself, claimant related that she can't bend or twist. T. 54. Either the pain or some of her medications have led her to feel "sad," and she is now seeing a psychiatrist at the Lakeview clinic. T. 54-55.

When the ALJ asked the vocational expert to make certain assumptions, including that plaintiff could perform a full range of light work, the expert believed claimant could return to any of her past jobs, including fast food worker, parts clerk, waitress, and cashier. T. 58. Assuming claimant is credible as to her complaints of pain, and her need for rest periods during the day, she could not work in any job available in significant numbers in the national or regional economy. T. 59-60.

## ANALYSIS

In the sole issue raised by claimant, she argues that the Commissioner erred by failing to properly evaluate her complaints of pain. As is well known, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, "unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[6] test, as follows:

---

[6] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir. 1986) (the case originally adopting the three-part pain standard).

In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (*citing Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Adamo v. Comm'r of Soc. Sec.,* 365 F. App'x 209, 214 (11th Cir. 2010) (*quoting Wilson*, 284 F.3d at 1225); *Elam v. R.R. Ret. Bd*., 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(*citing Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1259 (M.D. Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be

considered. *Marbury*, 957 F.2d at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt*, 921 F.2d at 1223; *MacGregor*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted). Nevertheless, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Dep't of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F. Supp. 2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and

complaints").[7]    People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  *Hand v. Heckler*, 761 F.2d 1545, 1548-49 (11th Cir. 1985), *aff'd sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986).  It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence."  *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984).  Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination

The ALJ determined that claimant, despite her lengthy medical history, has the residual functional capacity to perform a full range of light work.[8]  The ALJ found

---

[7] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

[8] As defined by the Commissioner's regulations:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine

significant the examination of medical consultant Dr. Michael Kasabian.[9]   The Commissioner's brief points out that claimant could get off and on Dr. Kasabian's exam table without assistance, had no limp, and could stand on her heels and toes. (Doc. 14, p. 5).

The ALJ also observed that claimant has been treated conservatively with medications.  T. 14, 16.  He further commented that claimant has "no longitudinal medical evidence of record (after her 2003 surgery) to support continuation of low back pain." T. 14.  For reasons not clear to me, the ALJ did not note that the surgeon who performed the last procedure, utilizing screws and bone graft, did not feel he had achieved a solid fusion, and continued plaintiff on narcotic pain medication, Methadone, after the surgery.  This alone would appear to call into question the ALJ's comment about lack of evidence to support low back pain.  But this is not alone.  Just before the hearing, a pain management specialist diagnosed chronic pain and felt a lumbar block should be considered.  T. 638.  The ALJ, with all due respect, appears to have dismissed these matters, noting that claimant was to continue with conservative treatment with pain medication through her primary physician.  T. 15. No consideration was given, however, to the financial limitations that impeded further treatment by the pain management specialists.

---

that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

[9] Dr. Kasabian reported a normal range of motion in each of thirty eight passive motion measurements.  T. 522-523.  This physician, whose medical specialty is not revealed by the record, appears to have performed a general medical examination.  T. 525-526.  The doctor mentioned history of back surgeries, with no comment as to what had been done or to what effect.  T. 525.

The crux of the ALJ's formulation of residual functional capacity here is the credibility finding:

> [T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity.
> . . .
> While it is credible that the claimant experiences some degree of pain and other symptoms, it is not credible that she experiences the level of symptomatology to the extent alleged . . . [T]he claimant's statements regarding the severity, frequency, and duration of her symptoms are overstated . . . [T]he undersigned finds that the claimant's allegations of an inability to work because of her subjective symptoms are not fully credible . . . .

T. 16. The ALJ found that claimant's testimony of her activities of daily living "is persuasive evidence that the claimant's alleged symptoms resulting from physical and/or mental impairments are not totally disabling." T. 16. In sum, the ALJ relied upon his view of the medical evidence, as exemplified by the statement, "[t]he undersigned recognizes the paucity of medical evidence in this case," T. 17, and upon his evaluation of claimant's credibility to uphold his selection of residual functional capacity.

The ALJ's ultimate determinations are not supported by substantial evidence. Although the ALJ acknowledge claimant's diagnostic and surgical history, he engaged in no analysis of that history, and, instead, moved immediately to his observation concerning lack of "longitudinal medical evidence . . . to support continuation of back pain." T. 14. Accordingly, this not a case where the ALJ has failed entirely to mention the relevant medical evidence. Instead, the ALJ "barely mentioned the evidence and failed to explain his findings relating to it." *Christensen*

*v. Astrue*, No. 5:07cv154/RS/EMT, 2008 WL 4192718, at *10 (N.D. Fla. Sept. 9, 2008). The undersigned is more than loathe to reject factual findings made by an authorized administrative tribunal. Nevertheless, one can scarcely overlook the unusual, and significant, medical history in this record. I also note, that in deciding not to particularly delve into that evidence, the ALJ did not say that the evidence was stale, or otherwise unreliable.

The last major back surgery occurred in 2003, something over four years before plaintiff filed this SSI claim. After that spinal fusion, claimant continued to report back pain to the surgeon. In November of 2003, Dr. Szymoniak diagnosed chronic back pain, and did not feel he had achieved a solid fusion. Accordingly, the doctor continued claimant on her prescription for the narcotic Methadone. For a person who has, while still quite young, undergone three major spinal surgeries, ultimately resulting in a less than desired result that left her dependent upon narcotic pain medication, the claim of lack of longitudinal evidence is unconvincing. Also weakening this appraisal is the diagnosis, post-surgery, of chronic back pain. To put it squarely, one is left to surmise what additional evidence claimant should have produced. The record supports no inference that further surgical intervention would be effective, and plaintiff is apparently endeavoring to arrange payment for epidural spinal injections. Accordingly, the first part of the pain standard is met here–claimant has shown a serious underlying medical condition.

The analysis must, then, turn to the credibility finding. Ms. Byrd has a criminal record, although the ALJ did not specifically identify that as a basis for the credibility finding. The conviction, however, involved unauthorized possession of the same drug that had been prescribed for her pain. The record does not suggest that claimant

was drug addict, although she was a user. Use of Methadone a year or so after Dr. Szymoniak's treatment, and his prescription for that pain medication, however, is actually consistent with continuing pain, and with claimant's testimony.

The ALJ did identify activities of daily living as support for the conclusion that claimant had not been candid about her complaints of pain. T. 16. The only activity identified, however, is "she does fold clothes." T. 16. The ability to fold clothes does not seem inconsistent with having a significant level of back pain. Moreover, the vocational expert testified that claimant's need to take significant rest breaks during the day would render her unemployable for Social Security purposes. So, assuming claimant told the truth about folding clothes, that would not seem to be a sufficient basis to reject her testimony concerning pain. Also, although activities of daily living may be considered, such consideration must be in the context of all the record evidence:

> We have consistently held that in ascertaining whether the [Commissioner's] findings are supported by substantial evidence, we do not consider only those parts of the record that support those findings, but rather must "view the entire record and take account of evidence in the record which detracts from the evidence relied on by the [Commissioner]."

*Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986). Here, the clothes folding, whether characterized as evidence of ability, or evidence of credibility, does not appear to have taken into account much of the record evidence concerning claimant's pain, and the source thereof. *See Parker*, 793 F.2d at 1180 (finding the ALJ's reliance upon plaintiff's "daily activities" to discount plaintiff's testimony as to pain to have been flawed for failure to consider the plaintiff's testimony that she had to lie down every two hours, that she had difficulty standing, fatigue and blurred vision.).

The ALJ also noted that no physician has opined that claimant is disabled because of any physical condition or resulting symptoms. The Commissioner's regulations, however, make clear that a statement from a medical source that a claimant is disabled does not bind the Commissioner. 20 C.F.R. § 404.1527(d)(1). When it comes to decisions concerning capacity to work, "the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2). Finally, the regulations caution claimants that Social Security "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(3). The lack of a treating doctor's opinion as to disability, in light of the information contained in the medical records concerning severity, was not a sufficient cause to reject claimant's testimony of pain.

The Commissioner, in his memorandum, argues that parts of the record do support the ALJ's credibility finding. (Doc. 14, p. 7). The Commissioner's justifications, however, are a bit more detailed than those set out by the ALJ. Also, the Commissioner has found "contradictory" statements made by claimant. (Doc. 14, p. 7). Nowhere, though, does the Commissioner explain, or claim, that these matters were relied upon by the ALJ. Counsel's arguments do not provide sufficient basis for upholding the ALJ's findings, because the ALJ alone has responsibility for making the crucial credibility determinations. "If an action is to be upheld, it must be upheld on the same bases articulated in the agency's order." *Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 896 (11th Cir. 2010).

Where the ALJ fails entirely to articulate reasons for discrediting subjective pain testimony, some case law provides "that the testimony be accepted as true." *Foote*, 67 F.3d at 1562. Here, the ALJ no doubt made a credibility finding, but as I

have determined, such was not adequately articulated. Even where the agency has improperly weighted claimant's credibility, a court should not rush to usurp the Commissioner's statutory function. Plaintiff's counsel aptly recognizes in the conclusion of his memorandum that "this claim should be reversed and remanded for further consideration." Accordingly, a proper evaluation of plaintiff's subjective complaints must be made. Any further determination of claimant's credibility, however, must take into account the ALJ's findings, not challenged here, that claimant suffers from at least the following: post lumbar laminectomy syndrome, lumbar radiculopathy, lumbar spondylolisthisis, lumbar herniated nucleus pulposus, lumbar spinal stenosis, and chronic pain. T. 12. If, upon remand, the Commissioner is unable to set out adequate reasoning for rejecting the severity of claimant's subjective complaints of pain, benefits should be awarded.

It is therefore respectfully RECOMMENDED:

The Commissioner's decision should be set aside, and the matter REMANDED for further proceedings consistent with this order.

At Pensacola, Florida, this 26th day of November, 2012.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).